**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TEDDY C. DODSON,

               Plaintiff,

vs.                                   Case No.  3:12-cv-1164-J-34JRK

UNITED STATES OF AMERICA
(Treasury Department, Internal Revenue
Service),

               Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

      This cause is before the Court on Plaintiff Teddy C. Dodson's ("Plaintiff('s)") Motion for Reasonable Administrative and Litigation Costs and Fees (Doc. No. 14; "Motion"), filed June 3, 2013, and Plaintiff's Affidavit in Support of Plaintiff's Motion for Reasonable Administrative and Litigation Fees and Costs (Doc. No. 14-3; "Affidavit"), filed that same date, to which Defendant the United States of America ("Defendant") filed a response in opposition on June 17, 2013, see Defendant's Brief in Opposition to Plaintiff's Motion for Costs and Fees (Doc. No. 15; "Response").  The Motion was referred to the undersigned by the Honorable Marcia Morales Howard, United States District Judge, for the issuance of a Report and Recommendation regarding an appropriate resolution.  See Order of Referral (Doc. No. 20), entered October 9, 2013.

---

[1]     Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14) days after service of this document. Failure to file a timely objection waives a party's right to a de novo review.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a).

## I.  Background

Plaintiff initiated this suit on October 25, 2012 by filing a four-count Complaint (Doc. No. 1) against Defendant for refunds for tax years 2007, 2008, 2009, and 2010 (count I); for specific performance in relation to an agreement entered into between Plaintiff and Defendant (count II); for breach of contract (count III); and for litigation fees and costs (count IV).  Defendant answered the Complaint on February 1, 2013 (Doc. No. 8) denying liability, and on February 22, 2013, Defendant filed an Amended Answer (Doc. No. 9) in which it largely admitted liability.  Thereafter, on May 8, 2013, the parties filed a joint Stipulation for Entry of Judgment (Doc. No. 11; "Stipulation") in which they agreed that judgment should be entered in favor of Plaintiff and against Defendant on Count I for the 2008, 2009, and 2010 refunds, plus interest.[2]  As part of the Stipulation, the parties agreed that "the remainder of the [C]omplaint should be dismissed without prejudice to the right of the plaintiff to file a motion for attorney fees and costs," and Defendant retained the right to oppose any such motion.  Id.

In accordance with the parties' Stipulation, on May 20, 2013, the Court entered a Judgment in favor of Plaintiff and against Defendant on Count I of the Complaint for refunds for tax years 2008, 2009, and 2010 totaling $6,404.00, plus interest (Doc. No. 13).  The remaining counts of the complaint were "dismissed without prejudice to Plaintiff's right to file a motion for attorney fees and costs . . . ."  Id.  The instant Motion followed.

---

[2]     As explained in more detail below, Plaintiff forfeited his claim to the 2007 refund, essentially for strategic reasons.

Although the procedural history of the case in this Court is short and uncomplicated, the real story begins with the Internal Revenue Service ("IRS") auditing Plaintiff's 2004 and 2005 tax returns and determining – ultimately wrongly so – that Plaintiff was not eligible for an exclusion he claimed on both returns.[3]  That wrongful determination led to a dispute between Plaintiff and the IRS lasting some four years, before Plaintiff finally was forced to initiate this lawsuit in October 2012 demanding that the IRS fulfill an agreement that the parties had entered into – but the IRS refused to honor – to settle the parties' dispute.  A recitation of the history of the administrative proceedings follows.

On both his 2004 and 2005 tax returns, Plaintiff claimed a "Foreign Income Exclusion allowable under 26 U.S.C. § 911 . . . ."  Compl. (Doc. No. 1) at 2 ¶ 7.  This type of "exclusion is available to U.S. Taxpayers who are outside of the country working for the majority of a tax year."  Id.  At some later date, the IRS audited Plaintiff's 2004 and 2005 tax returns.  Id. During the audit, there was either some miscommunication between Plaintiff and his tax representative at the time,[4] or "lack of proper representation[.]"  Id. at 2 ¶ 8.  The outcome of the audit was that the IRS "disallowed" the Foreign Income Exclusion for both tax years. Id.  A formal Notice of Deficiency was issued by the IRS on February 27, 2007.  Motion at 7-8.  The result was a tax deficiency for both tax years 2004 and 2005, see id.; Response at 1, and the IRS consequently kept Plaintiff's refunds for tax years 2007, 2008, 2009, and 2010 to offset the deficiency.

---

3       Defendant concedes as much, stating that Plaintiff "prevailed in this dispute at the administrative level . . . ."  Response at 4.

4       Plaintiff "was working overseas at the time of the audit[.]" Compl. (Doc. No. 1) at 2 ¶ 8.

Presumably near the time of the audit, Plaintiff amended his tax returns for 2004 and 2005, either "formal[ly] or infomal[ly]," apparently claiming the same Foreign Income Exclusion for both years.  Compl. at 2-3 ¶ 9.  Upon the filing of amended returns, the IRS "accepted" the 2005 claim of a Foreign Income Exclusion, "but denied or ignored" the 2004 claim of Exclusion.  Id.

Plaintiff, believing the denial or failure to recognize the 2004 claim of Exclusion to be unwarranted, filed with the IRS (through his current attorney) on July 16, 2008 a "Form 656-L, Offer-in-Compromise (Doubt as to Liability)."   Notice of Filing Redacted Exhibits to Complaint and Demand for Jury Trial (Doc. No. 4; "Redacted Exhibits"[5]) at 7-8; Compl. at 3 ¶ 10.  As part of the Offer-in-Compromise, Plaintiff offered to pay $50.00 to settle his tax liability for the year 2004.  Redacted Exhibits at 7.  Plaintiff attached to the Form 656-L a "Narrative," in which he explained in detail why he believed the Foreign Income Exclusion to be applicable to him for tax year 2004.  Id. at 9-11. Plaintiff also attached several documents in support of his request for the Exclusion.  Id. at 12-28.

Under the Internal Revenue Code, an Offer-in-Compromise is automatically deemed accepted if not rejected within 24 months (or two years) of the submission of the offer.  26 U.S.C. § 7122(f).[6]  Plaintiff's Offer-in-Compromise "languished for nearly the statutory two

---

[5]     All citations to the Redacted Exhibits are to the pagination assigned by the Court's electronic filing system.

[6]     This citation is to the first subsection (f) of section 7122.  Evidently, Congress enacted two subsections labeled "(f)."  See 26 U.S.C.A. § 7122 n.1.

(2) year period . . . , at which time the Offer Specialist or Tax Compliance Officer issued a rejection letter." Compl. at 3 ¶ 11.  The rejection was dated July 8, 2010.  Motion at 8.[7]

As permitted by the Internal Revenue Code, see 26 U.S.C. § 7122(e)(2), on August 5, 2010, Plaintiff took an appeal of the denial to the IRS Office of Appeals, Compl. at 3 ¶ 11; Motion at 8.  The Office of Appeals then sent Plaintiff a letter dated November 25, 2011, in which it "accepted [Plaintiff's] offer in compromise signed and dated by [Plaintiff] on July 16, 2008."  Redacted Exhibits at 33; see Compl. at 3 ¶ 11.  In essence, Plaintiff's administrative appeal had been successful, and the IRS had recognized he should have had a Foreign Income Exclusion for tax year 2004.  See Response at 4 (Defendant conceding Plaintiff prevailed in the dispute of "whether [he] could exclude from tax certain income that he earned during 2004").

Just prior to the November 25, 2011 acceptance of the July 16, 2008 Offer-in-Compromise, on November 18, 2011, Plaintiff filed (through his current attorney) a "Qualified Offer" pursuant to 26 U.S.C. § 7430(g), which could have had the effect of entitling Plaintiff to attorneys' fees if the IRS had rejected it and an ultimate judgment had been less than Plaintiff's liability if the "Qualified Offer" had been accepted, see 26 U.S.C. § 7430(c)(4)(E). Redacted Exhibits at 55-56.  Under the terms of the "Qualified Offer," Plaintiff agreed to

---

[7]     On about March 9, 2010, roughly four months prior to the rejection of Plaintiff's Offer-in-Compromise, Plaintiff had filed a formal amended tax return for the tax year 2004 in which he sought refunds of the 2007 and 2008 tax overpayments. See Motion at 3 ¶ 10; Compl. at 4 ¶ 13; Redacted Exhibits at 29-49.  Plaintiff filed the formal amended 2004 return so as not to "forfeit[] refunds which were applied towards the 2004 tax liability from subsequently filed tax returns." Compl. at 4 ¶ 13; see 26 U.S.C. § 7422(a) (providing that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary . . .").  The IRS apparently did not act on this filing.  Motion at 3 ¶ 10.

compromise his 2004 tax liability for $250.00; he proposed no penalty arising from the audit or the proposed $250.00 assessment; he proposed statutory interest on the $250.00 as provided by the Internal Revenue Code; and he proposed a refund of overpayment exceeding $250.00. Id. at 56.

As previously stated, the IRS chose to accept the July 16, 2008 Offer-in-Compromise. See Redacted Exhibits at 33-36. Before the IRS did so, however, it had forfeited Plaintiff's 2007, 2008, 2009, and 2010 refunds to offset Plaintiff's 2004 tax liability. Plaintiff states that the form on which the Offer-in-Compromise was submitted (Form 656-L) "theoretically allows [Defendant] the contractual right to keep the 2007 tax refund . . . but obligates [Defendant] to refund the amounts that it applied for the tax overpayments for 2008, 2009, and 2010." Compl. at 4 ¶ 14. Indeed, a provision of the form provides that "[t]he IRS will keep all payments and credits made, received or applied to the total original tax liability before submission of the offer." Redacted Exhibits at 7, Section 6(e) (emphasis added). Given that the Offer-in-Compromise was submitted after the 2007 refund had been applied toward the tax deficiency, provision 6(e) of the form allows the IRS to keep the 2007 refund, although in Plaintiff's attorneys' experience, the IRS rarely does.[8] See Motion at 16 n.5. Defendant recognizes that pursuant to provision 6(e) of the form, it should have refunded the 2008, 2009, and 2010 overpayments, but it never did. Response at 3.

---

[8]      The Form 656-L was revised in February 2012 to allow individuals to keep any refunds for pre- and post-offer years. See Compl. at 4 ¶ 16; Motion at 5 n.2, 16 n.5.

Defendant's inaction caused Plaintiff's attorney to send a letter to the Office of Appeals on March 9, 2012.  Redacted Exhibits at 59-60.[9]  The March 9, 2012 letter notified the Appeals Officer that nearly four months had passed since the acceptance of the Offer-in-Compromise, but that "the liability ha[d] not been abated, nor ha[d] Plaintiff] received his refund of $7,238.00 (plus accrued interest)." Id. at 59.  The letter closed by requesting that the matter be researched.  Id. at 60.  Plaintiff apparently did not receive a response.

Plaintiff also tried to avail himself of the Taxpayer Advocate Service[10] by sending a letter (through his current attorney) on July 24, 2012.  See Motion at Ex. G.  This attempt also proved futile because the Service merely sent Plaintiff eight letters over the course of about nine months, stating in each that it needed additional time to research the matter.  See id. at Ex. H.  The last letter is dated May 3, 2013 and states that the matter is estimated to be resolved by August 2, 2013.  Id. at Ex. H. p. 35.[11]

Having failed to obtain relief administratively, Plaintiff initiated the instant suit on October 25, 2012.  See Compl.  As introduced supra near the beginning of this Background Section, Plaintiff obtained a judgment on May 20, 2013 largely in his favor (without opposition by Defendant).  Specifically, Plaintiff was awarded a refund for tax year 2008 in the amount of $2,802.00; a refund for tax year 2009 in the amount of $1,432.00; and a refund for tax year 2010 in the amount of $2,170.00, for a total of $6,404.00, plus interest as provided in 28

---

[9]      See also Motion at Ex. F (duplicate).

[10]     The Taxpayer Advocate Service is "an independent organization within the IRS" that makes its mission to "help taxpayers resolve problems with the IRS and recommend changes that will prevent the problems." Taxpayer Advocate Service, http://www.taxpayeradvocate.irs.gov/About-TAS/Who-We-Are (last visited Dec. 6, 2013) (italics omitted).

[11]     This citation is to the pagination assigned by the Court's electronic filing system.

U.S.C. § 2411.  Judgment (Doc. No. 13) at 1.  On October 1, 2013, Plaintiff filed a Satisfaction of Judgment (Doc. No. 17) acknowledging receipt from Defendant of the $6,404.00 plus interest.

## II.  Discussion

Through the instant Motion, Plaintiff seeks fees and costs totaling $14,315.08 for his efforts both in this Court and during the administrative proceedings, see Motion at 20, a request that Defendant opposes in its entirety, see generally Response.  Plaintiff so moves pursuant to 26 U.S.C. § 7430, a section of the Internal Revenue Code allowing for an award of costs and fees in certain circumstances (hereinafter "section 7430" or "tax statute").  See Motion at 1.  The undersigned summarizes the applicable statutory framework and the parties' positions, and then analyzes the requests for both administrative and litigation costs.

### A.  Statutory Framework

"Congress enacted § 7430 to deter abusive actions or overreaching by the IRS and to enable taxpayers to vindicate their rights regardless of their economic circumstances." Cooper v. United States, 60 F.3d 1529, 1530 (11th Cir. 1995) (quotation, citation, and internal alteration omitted).  Under section 7430, "the prevailing party" of "any administrative or court proceeding which is brought . . . against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under [title 26]" may be awarded both "(1) reasonable administrative costs incurred in connection with such administrative proceeding within the [IRS], and (2) reasonable litigation costs incurred in connection with such court proceeding."  26 U.S.C. § 7430(a).  "The term 'administrative proceeding' means any procedure or other action before the [IRS]."  Id. § 7430(c)(5).  "The

term 'court proceeding' means any civil action brought in a court of the United States . . . ." Id. § 7430(c)(6).

"The term 'prevailing party' means any party . . . which . . . has substantially prevailed with respect to the amount in controversy, or . . . has substantially prevailed with respect to the most significant issue or set of issues presented[.]"[12] Id. § 7430(c)(4); see also Fla. Country Clubs, Inc. v. Comm'r, 404 F.3d 1291, 1294 (11th Cir. 2005) (citations omitted). There is an exception to the "prevailing party" definition in that "[a] party  shall not be treated as the prevailing party . . . if the United States establishes that the position of the United States in the proceeding was substantially justified."  26 U.S.C. § 7430(c)(4)(B)(i); see also Fla. Country Clubs, 404 F.3d at 1294 (citation omitted).

There are also limitations to awarding costs to a "prevailing party" under section 7430. Relevant to this case, prior to awarding litigation costs, a court must "determine[] that the prevailing party has exhausted the administrative remedies available to such party within the [IRS]."  Id. § 7430(b)(1).  Also relevant to this case, section 7430 states that the IRS (not a court) may award "reasonable administrative costs only if the prevailing party files an application with the [IRS] for such costs before the 91st day after the date on which the final decision of the [IRS] as to the determination of the tax, interest, or penalty is mailed to such party."  Id. § 7430(b)(4).

Finally, section 7430 dictates the types of costs that are recoverable.  Recoverable administrative costs include "any administrative fees or similar charges imposed by the

---

[12]     The party must also meet net worth requirements to be considered a "prevailing party."  See 26 U.S.C. § 7430(c)(4)(A)(ii) (incorporating 28 U.S.C. §§ 2412(d)(1)(B) and 2412 (d)(2)(B)).  Defendant does not dispute that Plaintiff meets the requirements, Response at 9 n.7, so they are not addressed herein.

[IRS]," as well as expenses of expert witnesses, costs of necessary reports and the like, and reasonable attorneys' fees not to exceed $125.00 per hour plus a cost-of-living adjustment determined by Congress.   Id. § 7430(c)(2)(A)-(B) (incorporating by reference id. § 7430(c)(1)(B)).   Recoverable litigation costs include "reasonable court costs," as well as expenses of expert witnesses, costs of necessary reports and the like, and reasonable attorneys' fees not to exceed $125.00 per hour plus a cost-of-living adjustment determined by Congress.  Id. § 7430(c)(1)(A)-(B).

**B. Parties' Positions**

Not surprisingly, the parties in their papers have vastly different ways of presenting and analyzing the facts.   Plaintiff asks for administrative and litigation costs in a single request.  See Motion at 9-20.  According to Plaintiff: he properly exhausted his administrative remedies, id. at 10-11; he is a "prevailing party" as that term is defined by section 7430, id. at 12-14; Defendant's position was not substantially justified at any step along the way, id. at 14-17; even if Defendant's position could be viewed as substantially justified, Plaintiff's November 18, 2011 "Qualified Offer" provides an exception to the "substantially justified" defense under the statute, id. at 17-18; and the fees and costs Plaintiff seeks are reasonable, id. at 19.

Defendant, on the other hand, separates and analyzes the facts in four "stages," contending that in each stage of the dispute, Plaintiff is not entitled to costs for different reasons.  Response at 4-8, 11-16.  The first stage, according to Defendant, covers the date that the IRS issued the Notice of Deficiency (February 27, 2007) through the date the IRS accepted Plaintiff's Offer-in-Compromise (November 25, 2011).  Id. at 4-5.  Defendant

contends that Plaintiff is not entitled to costs at this stage because although he was a "prevailing party" in that he successfully appealed the decision not to accept his Offer-in-Compromise, he did not timely file a claim for costs with the IRS. Id. at 11.  The second stage, according to Defendant, covers the date of acceptance (November 25, 2011) "to the commencement of preparation for litigation," which Defendant contends is September 21, 2012 (the date that the billing statements reflect a possibility of a "Complaint," see Aff. at Ex. 2 p. 22[13]).  Response at 5-7 (emphasis omitted).  Defendant argues that Plaintiff is not entitled to costs at this stage "because a new dispute had arisen, and the IRS never took a position on it." Id. at 12.

Defendant contends the third stage is the "litigation" stage and covers the initial preparation of the Complaint filed in this Court (about September 21, 2012) to the entry of the Judgment (May 20, 2013). Id. at 7-8.  Defendant asserts Plaintiff is not entitled to costs at this stage because Defendant's "position was substantially justified." Id. at 14 (italics omitted).  The fourth stage, according to Defendant, is the preparation and filing of the instant Motion (which incidentally generated the highest number of attorney hours of any of the stages). Id. at 8.  Defendant argues the Court should not award Plaintiff costs for pursuing the instant Motion for two reasons: (1) Plaintiff has not demonstrated his entitlement to costs at any of the previous stages; and (2) the "request as it pertains to fees for fees is inherently unreasonable because the amount sought is not proportional to the results obtained." Id. at 15-16 (citation omitted).

---

[13]     This citation is to the pagination assigned by the Court's electronic filing system.

## C.  Analysis

Generally speaking, there are two distinct inquiries here: whether costs should be awarded for Plaintiff's efforts at the administrative level; and whether litigation costs should be awarded.  See 26 U.S.C. § 7430(a).  For ease of analysis, the undersigned further subdivides the inquiries in much the same way as Defendant does in the Response.

### 1.  Administrative Proceedings Through Acceptance of Offer-in-Compromise

Plaintiff seeks an award of $1,908.00 in attorneys' fees (10.2 hours times $180.00 per hour) and $87.78 in costs for the administrative proceedings commencing August 18, 2010 through his attorney's December 5, 2011 receipt of the acceptance of the Offer-in-Compromise dated November 25, 2011.[14]  See Aff. at Exs. 1-2.[15]  Defendant concedes Plaintiff was the prevailing party when the Appeals Officer accepted Plaintiff's Offer-in-Compromise on November 25, 2011.  Response at 11.  Defendant argues, however, that Plaintiff is not entitled to administrative costs through the date of the acceptance of the Offer-in-Compromise because Plaintiff failed to apply for them through the IRS as mandated by section 7430.  Id.  Plaintiff does not in his Motion address whether the failure to apply for fees

---

[14]    Plaintiff concedes he is not entitled to administrative costs prior to the initial denial of his Offer-in-Compromise.  See Motion at 19.

[15]    More specifically, the 10.2 hours of work performed and $87.78 in costs expended during this time period are reflected on invoices bearing the following dates: August 18, 2010; October 20, 2010; July 19, 2011; August 17, 2011; September 20, 2011; October 22, 20111; and December 16, 2011 (for work performed through December 5, 2011).  See Aff. at Ex. 2.  Plaintiff seeks an hourly rate of $180.00 for work performed in 2010 and 2011.  See id. at Ex. 1.  Defendant does not attack the amount of costs sought, nor does Defendant contest the hourly rates sought.  See Response at 5, 11.

through the IRS bars his attempt to have those fees awarded by this Court.[16]  See generally Motion.

Under section 7430(b)(4), a "prevailing party" must "file[] an application with the [IRS] for [administrative] costs before the 91st day after the date on which the final decision of the [IRS] as to the determination of the tax, interest, or penalty is mailed to such party."  26 U.S.C. § 7430(b)(4).  "The final decision of the [IRS] . . . is the document which resolves the tax liability of the taxpayer with regard to all tax, additions to tax and penalties at issue in the administrative proceeding (such as a Form 870 or closing agreement), or a notice of assessment for that liability (such as the notice and demand under section 6303), whichever is earlier mailed, or otherwise furnished, to the taxpayer."  26 C.F.R. § 301.7430-2(c)(5).

Despite having achieved a favorable result and "final decision" through the IRS's acceptance of his Offer-in-Compromise, Plaintiff failed to file an application with the IRS for administrative fees.  Having failed to do so, Plaintiff is barred from recovering administrative fees through the acceptance.  Thus, this Court cannot grant his request for $1,908.00 in attorneys' fees and $87.78 in costs prior to the acceptance.

### 2.  Acceptance of Offer-in-Compromise through Preparation for Litigation

Plaintiff seeks an award of $1,116.00 in attorneys' fees (6.2 hours times $180.00 per hour) and $106.92 in costs for the time period in between the IRS's acceptance of his Offer-in-Compromise and the preparation of the Complaint and summons for the instant case.  See

---

[16]     Plaintiff instead focuses on his exhaustion of administrative remedies giving rise to the lawsuit, see Motion at 10-11, with which Defendant does not quarrel.

Aff. at Exs.1-2.[17] This is the time period in which the IRS, having accepted Plaintiff's Offer-in-Compromise that obligated it to release Plaintiff's 2008, 2009, and 2010 refunds, failed to issue the refunds even after being notified (although informally so) of its failure. Defendant concedes that it should have acted but did not. Response at 3. Defendant argues, however, that "a new dispute had arisen," that is, "what overpayments the IRS could retain and offset against the 2004 liability, and what overpayments needed to be refunded to [Plaintiff]." Id. at 12. Defendant goes on to state that the "new" dispute "was not the result of any conscious decision by the IRS, but was rather the result of a delay in issuing refunds required by the settlement." Id. Defendant points out that Plaintiff never formally presented "the problem" to the IRS and therefore it did not have to affirmatively respond. Id. The IRS never took an official position on the "new" dispute, says Defendant, so it cannot now be deemed under section 7430(c)(4)(B) to have taken a substantially unjustified position. Id. (citations omitted).

Plaintiff urges the Court to find that Defendant "is not protected by failing to act." Motion at 14. In response, Defendant claims that Plaintiff is "ask[ing] the Court to rule in his favor merely on fairness grounds, without regard to the terms of the statute." Response at 13. Defendant stresses that section 7430 is a limited waiver of sovereign immunity, and as such, it must be construed strictly in favor of Defendant. Id. at 8-9 (citations omitted), 13-14 (citations omitted).

---

[17]     More specifically, the 6.2 hours of work performed and $106.92 in costs expended during this time period are reflected on invoices bearing the following dates: December 16, 2011 (for work performed beginning December 9, 2011); January 18, 2012; March 20, 2012; April 18, 2012; May 16, 2012; July 18, 2012; August 16, 2012; and October 19, 2012 (for work performed through September 19, 2012). See Aff. at Ex. 2. Plaintiff seeks an hourly rate of $180.00 for work performed in 2011 and 2012. See id. at Ex. 1. Defendant does not challenge the amount of costs sought, nor does Defendant contest the hourly rates sought. See Response at 5-7, 12-14.

14

Defendant's contention that its inaction cannot be used against it for purposes of determining whether it was substantially justified is simply unavailing.  The problem with the costs sought by Plaintiff for this phase of the proceedings, however, is that the statute – which Defendant correctly contends must be strictly construed – does not allow for recovery of costs for Plaintiff's efforts during this so-called "prelitigation" phase.

In Pacific Fisheries Inc. v. United States, the United States Court of Appeals for the Ninth Circuit held that taxpayers could not recover costs for their efforts prior to filing petitions in the district court to quash subpoenas that were wrongfully issued by the IRS.  484 F.3d 1103, 1104-05, 1111 (9th Cir. 2007).  In so holding, the Ninth Circuit reasoned in part that "[t]he plain language of the statute distinguishes administrative from judicial proceedings and does not provide a bridge for conduct or events that span those proceedings."  Id. at 1108. The court then went on to discuss "[t]he statutory evolution of the fees provision," as well as to compare it to a similar administrative statute, the Equal Access to Justice Act ("EAJA"). Id. at 1108-10.  Noting that the EAJA specifically "provides for attorneys' fees awards when a government agency takes a position either before or during litigation that is not substantially justified," the court found "[t]he tax statute includes no gap filler for including prelitigation agency action as part of the government's position in litigation."  Id. at 1110 (emphasis in original).

It is regrettable here that the IRS's failure to recognize and adhere to the parties' agreement caused Plaintiff to have to initiate suit.  It is also regrettable that the tax statute does not have a provision that would permit recovery of costs for efforts in trying to avoid

initiation of a lawsuit and trying to resolve the matter in a reasonable fashion.[18]  See id. at 1106 (stating the court was "not unsympathetic to the taxpayers' claimed plight" but nevertheless concluding that the statute did not permit costs).  The tax statute, however, simply does not permit Plaintiff to recover the $1,116.00 in attorneys' fees and $106.92 in costs he seeks for his efforts between the IRS's acceptance of his Offer-in-Compromise and his preparation for litigation.  See Pac. Fisheries, 484 F.3d at 1111 (finding "[a]lthough the IRS's [conduct] forced the taxpayers into litigation, . . . their case falls into a gap in the statute, [and] it is not [the court's] role to bridge that gap").  Indeed, even if such costs could somehow be deemed under the tax statute to have been spent during "administrative proceedings," the statute does not permit recovery of them because there is no provision for applying for such costs: the only provision addressing applying for administrative costs mandates that a taxpayer apply for costs before the "91st day" following a "final decision . . . as to the determination of the tax, interest, or penalty[.]"  26 U.S.C. § 7430(b)(4).  Even though a final decision had been rendered on Plaintiff's tax liability, the IRS never issued Plaintiff's refunds as promised.  The inaction, i.e., the basis for the instant cost request, cannot be deemed a "final decision" under the tax statute because one had already been rendered.

All of that said, the information known to the IRS during the administrative proceedings, and during this prelitigation stage, can and is taken into account when determining whether Defendant's position at the next stage, i.e., the litigation stage, was

---

[18]     Indeed, Defendant agrees that Plaintiff acted reasonably and recognizes to not award costs for these efforts "may appear harsh."  Response at 13.

substantially justified.  See Smith v. United States, No. 3:09cv228 (JBA), 2011 WL 841053, at *4 n.1 (D. Conn. Mar. 7, 2011) (unpublished) (citations omitted) (recognizing the Pacific Fisheries holding, but stating that in making the determination of whether the defendant's actions were substantially justified in the litigation proceedings, the court can consider "pre-litigation actions [the plaintiff] took that may have informed [the d]efendant's conduct during the litigation").[19]

### 3.  The Case in this Court

Plaintiff seeks $1,703.00 in attorneys' fees (6.4 hours in 2012 times $180.00 and 2.9 hours in 2013 times $190.00) and $627.11 in costs for his efforts in the instant case prior to the preparation and filing of the instant Motion.  See Aff. at Exs. 1-2.[20]  Defendant assumes

---

[19]    In urging the Court to find that Defendant cannot be protected by its failure to act at the administrative level, Plaintiff cites two unpublished district court cases that reject the contention that because the IRS never officially opposed a claim at the administrative level, its conduct cannot have been substantially unjustified. Motion at 13-14 (citing Grisanti v. United States, No. 3:05CV12-D-A, 2006 WL 2908642 (N.D. Miss. Oct. 10, 2006) (unpublished); Reynoso v. United States, No. 10-00098 SC, 2011 WL 3473366 (N.D. Cal. Aug. 9, 2011) (unpublished)).  Given the undersigned's finding that the tax statute does not permit costs for Plaintiff's prelitigation efforts, these cases are inapposite.

To that end, the case upon which Defendant relies, Florida Country Clubs, 404 F.3d at 1294-95, is also distinguishable.  There, the court found that the IRS could not have taken a position because the triggering events listed in the tax statute had not occurred.  Id.  Namely, the tax statute provides that the "position of the United States" for purposes of administrative proceedings is "the earlier of – (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency." 26 U.S.C. § 7430(c)(7)(B)(i)-(ii).  In Florida Country Clubs, because neither of those events had occurred, the court found that the IRS did not take a position administratively.  404 F.3d at 1294-95.  Here, however, both events occurred, so the position of the IRS administratively should be taken into account from the earlier event, i.e., the date of the notice of deficiency.  As explained above, the administrative proceedings that the statute recognizes in terms of allowing costs ended when the Appeals Officer accepted Plaintiff's Offer-in-Compromise, and Plaintiff forfeited his opportunity to seek costs for the events occurring prior to the acceptance.  So whether the IRS actually took a position during this limbo prelitigation period between the acceptance and the litigation does not matter for purposes of determining whether Plaintiff is entitled to costs for this period.

[20]    More specifically, the 9.3 total hours of work performed and $627.11 in costs expended during this time period are reflected on invoices bearing the following dates: October 19, 2012 (for work performed beginning September 21, 2012); March 19, 2013; and May 31, 2013 (for work performed through May 8, 2013).  See Aff. at Ex. 2.  Plaintiff seeks an hourly rate of $180.00 for work performed in 2012 and an hourly rate of $190.00 for work performed in 2013.  See id. at Ex. 1.  Defendant does not challenge the amount of costs sought, nor does

that the "court proceedings" time frame covers Plaintiff's efforts beginning on September 21, 2012 (the date Plaintiff's attorneys' billing records reflect discussion of a "Complaint").[21] <u>See</u> Response at 7-8, 14-15.  Further, Defendant does not challenge whether Plaintiff obtained a favorable decision at this level.  <u>See id.</u> at 14-15.  Defendant does contend, however, that Plaintiff cannot be a "prevailing party" as defined by the tax statute because Defendant's position was substantially justified.  <u>Id.</u>

The burden is on the United States to establish that its position is substantially justified.  26 U.S.C. § 7430(c)(4)(B)(i).[22]  "The government's position is substantially justified if there is a reasonable basis for it both in law and in fact."  <u>Grant v. Comm'r</u>, 103 F.3d 948, 952 (11th Cir. 1996).  For purposes of determining whether costs are warranted for the court proceedings, the Court takes into account only the position of the United States during the court proceedings.  <u>See id.</u>  It is permissible, nonetheless, when determining whether the United States' position in a court proceeding was substantially justified, to take into account information that the United States should have been aware of by virtue of the administrative proceedings.  <u>See</u> <u>Hanson v. Comm'r</u>, 975 F.2d 1150, 1152 n.2 (5th Cir. 1992) (reviewing whether government's position in a court proceeding was substantially justified and concluding that the court was not prevented from "reviewing the government's position in litigation against the backdrop of the administrative actions that have gone before" given that

---

Defendant contest the hourly rates sought.  <u>See</u> Response at 8, 14-15.

[21]     Given that Defendant assumes the "court proceedings" stage began this early, the undersigned does too.

[22]     There are some pre-1996 cases that indicate the burden is on the taxpayer, but Congress amended section 7430 in 1996 to provide specifically that the burden is on the United States.  <u>See</u> <u>Barford v. Comm'r</u>, 194 F.3d 782, 786 n.4 (7th Cir. 1999); 26 U.S.C. § 7430(c)(4)(B)(i).

the backdrop was relevant to the court's determination); <u>Smith</u>, 2011 WL 841053, at *4 n.1 (citations omitted).  Indeed, the government "cannot have a reasonable basis in both fact and law if it does not diligently investigate a case." <u>Nicholson v. Comm'r</u>, 60 F.3d 1020, 1029 (3d Cir. 1995) (quotations and citations omitted).[23]

Here, the undersigned finds that Defendant's position in the instant litigation was not substantially justified.  Arguing otherwise, Defendant relies on its concession of Plaintiff's "entitlement to the refund before the pleadings closed and before any discovery was conducted."  Response at 14.  The United States Court of Appeals for the Eleventh Circuit has cautioned in the context of a claimant seeking EAJA fees, however, that if the issues involved in the case are "routine and clear cut," the government's concession of the case does not bar a fees award.  <u>Ashburn v. United States</u>, 740 F.2d 843, 850 (11th Cir. 1984), <u>superseded by statute on other grounds as recognized by</u>, <u>United States v. Certain Real Estate Prop. Located at 4880 S.E. Dixie Highway</u>, 838 F.2d 1558, 1560, 1560 n.5 (11th Cir. 1998).

The United States Court of Appeals for the Fifth Circuit cited the Eleventh Circuit's decision in <u>Ashburn</u> with approval when determining whether litigation costs were warranted under the tax statute.  <u>Hanson</u>, 975 F.2d at 1155 (citation omitted).  In <u>Hanson</u>, the court found that the government's litigation position was not substantially justified, even when it ultimately conceded the case, given that "[t]he government's underlying legal and factual position in the litigation . . . was utterly insupportable." <u>Id.</u> at 1154.  Admittedly, the

---

[23]    The <u>Nicholson</u> court discusses the IRS's position during administrative proceedings, <u>Nicholson</u>, 60 F.3d at 1029, but that court's observation about failure to diligently investigate a case applies with equal force to discussing the government's position during court proceedings.

government's conduct in <u>Hanson</u> and the length of the proceedings in <u>Hanson</u> were more compelling than Defendant's conduct and the length of the proceedings here. The <u>Hanson</u> case proceeded through discovery and through the filing of dispositive motions before the government realized and conceded that an error at the administrative level had caused the lawsuit to be initiated. <u>Id.</u> at 1151-52. The <u>Hanson</u> court therefore specifically left open "the question whether the government should be obliged to pay fees when it surrenders at the very outset of litigation." <u>Id.</u> at 1156 n.4 (observing the United States Court of Appeals for the District of Columbia Circuit did the same) (citing <u>Spencer v. N.L.R.B.</u>, 712 F.2d 539, 556 n.58 (D.C. Cir. 1983), <u>superceded by statute</u>, 28 U.S.C. § 2412(d)(2)(D)).

Importantly, though, the <u>Hanson</u> court declined the government's invitation to hold that "if the Commissioner promptly concedes a case, he defeats a motion for litigation costs under § 7430." <u>Id.</u> at 1155. Observing that "the government would have th[e] Court hold that the Commissioner's otherwise unreasonable position in litigation is automatically rescued from a § 7430 award if he surrenders 'promptly,'" the Fifth Circuit determined that the "significance of the government's concession at a given point, in light of all of the facts in a given case, will be left in the first instance to the sound discretion of the trial court." <u>Id.</u> at 1155-56.

Further, the Fifth Circuit in <u>Hanson</u> reiterated its previous observation that "'[i]f the IRS takes an arbitrary position and forces a taxpayer to file suit, then, after the papers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the cost of suing.'" <u>Id.</u> at 1156 (quoting <u>Powell v. Comm'r</u>, 791 F.2d 385, 391 (5th Cir. 1986)). "This reading of § 7430 allows tax litigants to recover the costs of a civil proceeding they never should have been required to initiate." <u>Id.</u> (citing <u>Powell</u>, 791 F.2d at 391).

If there were ever a case for awarding costs for court proceedings even when the government almost immediately concedes the case, this is it. In total, Plaintiff battled the IRS for more than four years trying to get the refunds to which he was entitled. When the IRS finally accepted Plaintiff's Offer-in-Compromise, it still failed to timely refund his tax returns. As Defendant recognizes, Plaintiff acted reasonably by trying to resolve this matter informally prior to initiating suit. Through his attorney, he made the IRS aware of the failure to refund the returns. He also sought the assistance of the Taxpayer Advocate Service, to no avail. When his efforts failed, he was forced to initiate this suit.

In the Complaint, Plaintiff laid out in chapter and verse why he was entitled to the refunds, so once again, Defendant was aware of his theory. Upon being served with the Complaint, Defendant sought and received additional time to file a response. See Motion (Doc. No. 6); Order (Doc. No. 7). On the extended deadline for responding, February 1, 2013, Defendant filed an Answer (Doc. No. 8) in which it denied liability. Having initially denied liability given all of the information available to Defendant and given that it received an extension of time to respond, presumably to investigate the information, weighs against Defendant. Cf. Sher v. Comm'r, 861 F.2d 131, 135 (5th Cir. 1988) (finding an "answer was substantially justified given the facts and claims pleaded," but recognizing "under different facts, the answer filed by the IRS would be inadequate without further investigation"), superseded by statute on other grounds by, 26 U.S.C. § 7430(c)(7).

It is true that Defendant filed an Amended Answer (Doc. No. 9) largely admitting liability about three weeks later on February 22, 2013. Defendant's early admission is one factor weighing in favor of Defendant. In light of the unique circumstances of this particular

21

case, however, that factor does not carry the day.[24]  The issues were so routine and clear

cut that the case never should have had to have been initiated in the first instance.  See

Hanson, 975 F.2d at 1155 (citation omitted); Ashburn, 740 F.2d at 850.

Plaintiff waited more than five years to receive the refunds to which he was entitled

all along.  He waited almost two years after the IRS agreed to pay.  The Satisfaction of

Judgment was not filed until more than four months after the Judgment was entered in

Plaintiff's favor.  Defendant has not met its burden of demonstrating that its position in the

instant case was substantially justified.[25]  Plaintiff is entitled to his costs for his efforts in

pursuing the instant case.  Therefore, Plaintiff should be awarded the $1,703.00 in attorneys'

fees and $627.11 in costs he seeks for this phase.

### 4.    "Fees for Fees" Request

Finally, Plaintiff seeks $4,693.00 in attorneys' fees (24.7 hours times $190.00 per

hour) for the preparation and filing of the instant Motion.  See Aff. at Exs. 1-2.[26]  Such so-

called "fees for fees" are generally recoverable if they are reasonable.  See Huffman v.

---

[24]    Nor does Defendant's contention that there was confusion at the administrative level about the type of form on which the Offer-in-Compromise was submitted, and that the confusion led to the error in failing to pay. Response at 2-3.  Defendant cannot rely on its "own inattention and mismanagement" in justifying its position. Hanson, 975 F.2d at 1155.  Further, Defendant recognizes that in addition to the typical tasks an attorney generally performs in initiating a lawsuit (drafting and filing a complaint, etc.), Plaintiff's attorney "conferred with the Government's trial attorney" during the short litigation period.  Response at 7.  Although the Court is not privy to those communications, it is entirely possible that those communications led, at least in part, to Defendant's ultimate capitulation.

[25]    Given the finding that Defendant's position was not substantially justified, the undersigned need not consider Plaintiff's theory that his "Qualified Offer" of November 18, 2011 (which the IRS never acted upon) provides an exception to the "substantially justified" defense under the tax statute.

[26]    More specifically, the 24.7 hours of work performed during this time period are reflected on the invoice bearing the date of May 31, 2013 (for work performed beginning May 9, 2013, totaling 19.7 hours), and the summary of fees sought, which includes an estimate of 5 additional hours to complete the Motion.  See Aff. at Exs. 1-2.  Plaintiff seeks an hourly rate of $190.00 for work performed in 2013.  See id. at Ex. 1.  Defendant does not challenge the hourly rate sought.  See Response at 8, 15-16.

Comm'r, 978 F.2d 1139, 1148-49 (9th Cir. 1992) (stating "[s]o long as the government's position justifies recovery of fees, any reasonable fees to recover such fees are recoverable") (citing Powell, 891 F.2d at 1172; Russell v. Heckler, 814 F.2d 148, 155 (3d Cir. 1987)); see also Ragan v. Comm'r, 135 F.3d 329, 335 (5th Cir. 1998) (finding that tax court erred in summarily disposing of a fees for fees request in a section 7430 petition); Jean v. Nelson, 863 F.2d 759, 780 (11th Cir. 1988) (in EAJA context, holding "that the United States may not oppose a 'fees for fees' request solely on the ground that its position in the fee litigation was substantially justified"). Defendant's first ground for opposing this request – that there is no basis for awarding costs at all so there cannot be a basis for awarding these fees – need not be addressed given the undersigned's finding that Plaintiff is entitled to his litigation costs.

Defendant's only remaining objection to the amount of fees requested for the preparation and filing of the instant Motion is that the request "is inherently unreasonable because the amount sought is not proportional to the results obtained."[27] Response at 16 (citation omitted). The undersigned rejects this argument and finds that the hours spent on the instant Motion were reasonable and justified for the adequate presentation of the matters to the Court. Indeed, the Motion is twenty-one pages long and contains numerous exhibits, as well as the Affidavit with accompanying billing statements for three years of work on this matter. Further, the total amount of costs in this matter that the undersigned is recommending awarding is actually less than the Judgment Plaintiff obtained in the amount

---

[27] Defendant does not contend that the amount sought of $190.00 per hour is above the statutory cap. Defendant does state that because the billing statements are redacted, and it cannot be determined what Plaintiff actually was charged for the work performed, the Court should reject the amount of $190.00. Response at 16. Defendant's contention in this regard is unwarranted. The billing statements are redacted, but Plaintiff specifically states in his Motion that the actual charges "equaled or exceeded $195.00 per hour, the statutory cap rate for attorneys[.]" Motion at 6. The undersigned accepts Plaintiff's representation.

of $6,404.00 plus interest.  On balance, the costs sought for the preparation and filing of the instant Motion are reasonable.  Therefore, the undersigned recommends awarding $4,693.00 in attorneys' fees for the preparation and filing of the instant Motion.

### III.  Conclusion

Plaintiff is not entitled to costs incurred during the administrative proceedings, nor is he entitled to "prelitigation" costs.  He is, however, entitled to a total of $6,396.00 in attorneys' fees ($1,703.00 for litigation plus $4,693.00 in "fees for fees") and $627.11 in costs for his efforts during the court proceedings.  Accordingly, it is

**RECOMMENDED**:

1.    That Plaintiff's Motion for Reasonable Administrative and Litigation Costs and Fees (Doc. No. 14) be **GRANTED, in part, and DENIED, in part;**

2.    That Plaintiff's Motion be **GRANTED** to the extent that the Court should award Plaintiff $6,396.00 in attorneys' fees and $627.11 in costs for his efforts in the court proceedings pursuant to 26 U.S.C. § 7430(a)(2);

3.    That the Court direct the Clerk to enter judgment in favor of Plaintiff and against Defendant accordingly;

4.    And that the Motion otherwise be **DENIED**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on December 9, 2013.


_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

24

kaw
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record